# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Larry Holmberg,                                      Civil No. 11-248 (DWF/LIB)

        Plaintiff,

v.                                                   **MEMORANDUM**
                                                     **OPINION AND ORDER**

Stealth Cam, LLC,

        Defendant.

_____

Carolyn H. B. Eckart, Esq., Catherine Shultz, Esq., David R. Fairbairn, Esq., Jessica M. Alm, Esq., Katherine J. Rahlin, Esq., and Larrin Bergman, Esq., Kinney & Lange, PA, counsel for Plaintiff.

Michael D. Ricketts, Esq., Monica Tavakoli, Esq., Eric W. Buether, Esq., and Mark D. Perantie, Esq., Buether Joe & Carpenter, LLC; Alan G. Carlson, Esq., James R. Hietala, Jr., Esq., and Joseph W. Winkels, Esq., Carlson Caspers Vandenburgh Lindquist & Schuman PA, counsel for Defendant.

_____

# INTRODUCTION

This matter is before the Court on a motion for summary judgment of non-infringement (Doc. No. 89) and a motion to exclude (Doc. No. 108) brought by Defendant Stealth Cam, LLC ("Stealth Cam"). For the reasons set forth below, the Court grants in part and denies in part the motion for summary judgment and grants in part and denies in part the motion to exclude.

## BACKGROUND

On February 1, 2012, Plaintiff Larry Holmberg ("Holmberg") filed this lawsuit against Stealth Cam, alleging infringement of U.S. Patent No. 7,880,793, entitled "Camera with Mounting Rail" (the "'793 Patent"). (Doc. No. 1.) On August 17, 2011, Holmberg amended his Complaint, adding a claim for infringement of U.S. Patent No. 6,556,245, entitled "Game Hunting Video Camera" (the "'245 Patent"). (Doc. No. 25.) On January 17, 2012, Holmberg filed a Second Amended Complaint, adding claims for infringement of U.S. Patent No. 8,045,038, entitled "Video Camera with Mount" (the "'038 Patent"), and U.S. Patent No. 8,059,196, entitled "Camera for Mounting" (the "'196 Patent"). (Doc. No. 42, Second Am. Compl.)[1]

The four patents-in-suit all relate to a video camera with a mounting apparatus and share the same specification.[2] The Court refers to them collectively as the "Holmberg Patents." Holmberg is the sole inventor of the Holmberg Patents, and describes the invention in the '245 Patent as follows:

---

[1]   The patents-in-suit are included as exhibits to the Second Amended Complaint; the '793 Patent is attached as Exhibit A; the '245 Patent is attached as Exhibit B; the '038 Patent is attached as Exhibit C; and the '196 Patent is attached as Exhibit D. All future citations to the patents in this case refer to these exhibits.

[2]   The '245 Patent issued on April 29, 2003. ('245 Patent at 1.) Holmberg filed the application for the '793 Patent on May 29, 2009, as a continuation of an application that was related to the '245 Patent application. ('793 Patent at 1.) Holmberg filed the application for the '038 Patent on October 1, 2009, as a continuation of the same application for the '793 Patent. ('038 Patent at 1.) Holmberg filed the application for the '196 Patent on December 3, 2008, as a continuation of the same application for the '793 Patent. ('196 Patent at 1.)

> This invention relates to a design of a video camera for recording
> game hunting.  More specifically it relates to a video camera design that is
> mountable on a weapon so a hunter can record what he or she sees as he or
> she is hunting without the help of a third party and without the limitations
> of related art.

('245 Patent, c. 1, ll: 15-20.)

Stealth Cam manufactures and sells digital cameras and accessories for outdoor pursuit applications, including light-weight digital video cameras for use during activities such as biking, paddling, and snowboarding.  (Doc. No. 93 ("Mann Decl.") ¶¶ 3, 4.)  In or around 2008, Stealth Cam introduced the EPIC Action Sports Video Camera, a portable digital video camera that can be mounted to various objects, such as helmets, handlebars, arms, or boots.  (*Id.* ¶ 6.)  The accused products include Stealth Cam's EPIC D1 POV Video Cam, EPIC HD (High Definition) 1080P, Epic HD 720P, and Epic Wide (the "Accused EPIC Cameras" or "EPIC Cameras").  (Doc. No. 117 ("Rahlin Decl.") ¶ 2, Ex. 1 ("Pl.'s Claim Chart") at 1.)  Stealth Cam also offers various accessories for its EPIC Cameras, such as adjustable hardware mounts, waterproof housing, hat clip mounts, strap mounts, tree screws, and shock absorbing pads.  (Mann Decl. ¶¶ 8-9.)  Additionally, Stealth Cam offers for sale an accessory that can be used with its EPIC cameras for viewing images recorded by the camera—the EPIC Viewer.  (*Id.* ¶¶ 14-15.)  The EPIC Viewer is a display screen that connects to the EPIC camera via an A/V cable that is sold with the camera.  (*Id.*)

On February 8, 2012, Holmberg filed his "Statement of the Case" asserting that Stealth Cam infringed the Holmberg Patents directly.  (Doc. No. 49 at 2 ("Defendant Stealth Cam, LLC has been and is making, using, selling, offering for sale, and/or

importing, without license or authority from [Holmberg], cameras that embody the invention(s) claimed in the [Holmberg Patents]."").)[3] Specifically in this action, Holmberg asserts that the Accused EPIC Cameras infringe claims 1-17 of the '793 Patent, claims 1-10 and 13-20 of the '038 Patent, claims 1-20 of the '196 Patent, and claim 8 of the '245 Patent.

On February 22, 2012, the Court entered a Pretrial Order establishing various deadlines in the case. (Doc. No. 49.) On April 1, 2012, Holmberg served his claim chart (Infringement Contentions). (Pl.'s Claim Chart.) In his claim chart, Holmberg asserts direct infringement of the Holmberg Patents, but does not assert infringement under the doctrine of equivalents or inducement. On May 8, 2012, Stealth Cam served its non-infringement claim chart. (Rahlin Decl. ¶ 3, Ex. 2 ("Def.'s Claim Chart").) In its claim chart, Stealth Cam argues, among other things, that its Accused EPIC Cameras do not contain a mounting rail for mounting the cameras to an object or a display. (*Id.* at 4, 5, 9.) Stealth Cam also asserts that it has not made, used, or sold any camera "for mounting to a functional weapon." (*Id.* at 4, 8.)

On February 8, 2013, the Court entered an Amended Pretrial Order, which provided the following with respect to the deadline for submitting expert reports:

> That both parties' disclosures on which they have the burden of proof shall be made on or before the latter of July 15, 2013, or 30 days after a claim construction ruling by the Court. The rebuttal experts' disclosures shall be disclosed on or before the latter of August 16, 2013, or 60 days after a claim construction ruling by the Court.

---

[3] There is no allegation that Stealth Cam indirectly infringed the Holmberg Patents under 35 U.S.C. § 271(b). (Doc. No. 49 at 2.)

(Doc. No. 60 at 7 (emphasis in original).)  Subsequently, on May 28, 2013, pursuant to

the joint stipulation of the parties (Doc. No. 83), the Court ordered that the deadlines

regarding expert disclosure be extended as follows:  "The deadline for the parties' expert

disclosure on which the party has the burden of proof shall be August 14, 2013. . . . The

deadline for rebuttal expert disclosure shall be September 18, 2013. . . . The deadline for

completion of expert discovery shall be October 14, 2013."  (Doc. No. 85.)  The parties

then agreed to extend the date to exchange expert reports to August 26, 2013.  (Rahlin

Decl. ¶ 9, Ex. 8.)

On July 15, 2013, the Court issued its claim construction order.  (Doc. No. 87

("*Markman* Order").)   On August 26, 2013, Holmberg submitted the expert report of

Fred P. Smith on the issue of infringement.  (Doc. No. 103 ("Smith Decl.") ¶ 5, Ex. A

("Smith Expert Report I").)  Stealth Cam submitted its expert report on non-infringement

on October 2, 2013.  (Doc. No. 92 ("Buckman Decl.") ¶ 4, Ex. A ("Buckman Expert

Report").)

Stealth Cam moved for summary judgment on non-infringement, and the hearing

date was ultimately set to occur after a settlement conference in early December 2013.

The parties agreed to a briefing schedule pursuant to which Holmberg's opposition would

be due November 12, 2013, and Stealth Cam's reply would be due November 26, 2013.

(Doc. No. 101.)  When Holmberg filed his opposition to Stealth Cam's motion for

summary judgment, it was accompanied by the Declaration of Fred P. Smith, which in

turn included Smith's August 26, 2013 Expert Report, as well as a supplemental expert

report dated November 12, 2013.  (Smith Expert Report I; Smith Decl. ¶ 6, Ex. B ("Smith Expert Report II").)

The Court considers Stealth Cam's motion to exclude and motion for summary judgment below.

## DISCUSSION

### I.       Motion to Exclude

Stealth Cam moves to exclude:  (1) Smith's November 12, 2013 expert report as untimely; (2) any theories of infringement under the doctrine of equivalents and indirect infringement because they were not disclosed in Holmberg's infringement contentions; and (3) the infringement theory that the EPIC Viewer accessory combined with the Accused EPIC Cameras can satisfy the "display" limitation because this theory was not disclosed in Holmberg's infringement contentions.

### A.       Timeliness

Stealth Cam argues that Smith's November 12, 2013 expert report is untimely and should be excluded.  In particular, Stealth Cam asserts that the deadline for Holmberg to submit an expert report on the issue of infringement was August 26, 2013.  Stealth Cam also argues that even if Smith's November 12, 2013 expert report is properly characterized as a "rebuttal" report, it was due "within 30 days of [Stealth Cam's] disclosures" and, therefore, would have been due on November 1, 2013.  *See* Fed R. Civ. P. 26(a)(2)(C)(ii).

Holmberg asserts that the November 12, 2013 expert report was timely because Stealth Cam presented a new non-infringement theory (that its cameras do not infringe

because they are not capable of being directly attached to a weapon) in Buckman's

October 2, 2013 expert report and in its motion for summary judgment.  Holmberg

submits that this theory was not set forth in Stealth Cam's claim chart or during the

*Markman* hearing.  Finally, Holmberg argues that any supplementation must be

completed by the time of pretrial disclosures.  *See* Fed. R. Civ. P. 26(e).

 The parties agree that Rule 37 of the Federal Rules of Civil Procedure governs

"Failure to Disclose or Supplement" under Rule 26(a) or (e).  Rule 37 provides that the

failure to disclose information under Rule 26(a) or (e) can result in sanctions, including

the exclusion of the information, unless the failure to disclose was substantially justified

or harmless.  Fed. R. Civ. P. 37(c)(1).

Here, with respect to the timeliness of Smith's November 12, 2013 expert report,

the parties debate the implications of, at most, a period of eleven days.  Even if Stealth

Cam is correct and Smith's November 12, 2013 expert report was untimely by eleven

days, this delay, alone, does not warrant the sanction of excluding the report.  However,

the Court will discuss Stealth Cam's motion as it pertains to the alleged inclusion of

newly asserted theories of infringement below.

### B.    New Theories

The Court has previously recognized the importance of infringement contentions

and the role they serve in patent cases by requiring a plaintiff "to crystallize its theory of

the case and patent claims."  *See In re Vehicle Tracking and Sec. Sys. ('844) Patent

Litig.*, MDL No. 11-2249, 2012 WL 3776463, at *2 (D. Minn. Aug. 30, 2012) (citing

*InterTrust Techs. Corp. v. Microsoft Corp.,* Civ. No. 01-1640, 2003 U.S. Dist. LEXIS

22736, at *8 (N.D. Cal. Nov. 26, 2003)).  "[W]hen parties formulate, test, and crystallize

their infringement theories before stating their preliminary infringement contentions, as

the Patent Rules require, the case takes a clear path, focusing discovery on building

precise final infringement or invalidity contentions and narrowing issues for *Markman,*

summary judgment, trial, and beyond."  *Connectel, LLC v. Cisco Sys., Inc.,* 391 F. Supp.

2d 526, 527 (E.D. Tex. 2005).  When confronted with deficient infringement contentions,

the Court may issue "further just orders."  Fed. R. Civ. P. 37(b)(2)(A).

> The Pretrial Order in this case required the following:
>
> Plaintiff's Claim Chart shall identify:  (1) which claim(s) of its patent(s) it
> alleges are being infringed; (2) which specific products or methods of
> defendant's it alleges literally infringe each claim; and (3) where each
> element of each claim listed in (1) is found in each product or method listed
> in (2), including the basis for each contention that the element is present.  *If
> there is a contention by Plaintiff that there is infringement of any claims
> under the doctrine of equivalents, Plaintiff shall separately indicate this on
> its Claim Chart and, in addition to the information required for literal
> infringement, Plaintiff shall also explain each function, way, and result that
> it contends are equivalent, and why it contends that any differences are not
> substantial.*

(Doc. No. 60 at 8 (emphasis added).)

Stealth Cam points out that, in his claim chart, Holmberg does not assert indirect

infringement or inducement of infringement, or infringement under the doctrine of

equivalents.  Stealth Cam argues, therefore, that the Court should preclude Holmberg

from pursuing any such theory of infringement and exclude expert testimony on the

same.  In particular, Stealth Cam objects to the following infringement theories put forth

by Holmberg:  (1) that the EPIC Viewer Accessory combined with the Accused EPIC

Cameras can satisfy the "display" limitation; (2) any theory of infringement under the

doctrine of equivalents; and (3) any theory of indirect infringement or inducement of infringement.[4]

First, with respect to Holmberg's theory that the EPIC Viewer Accessory combined with Accused EPIC Cameras can satisfy the "display" limitation, there is no dispute that in his claim chart, Holmberg identifies a display located *on* the Accused EPIC Cameras.  (Pl.'s Claim Chart at 7, 13, 22, 29, 40 & 44.)  There is also no dispute that the display device located *on* the Accused EPIC Cameras only displays information about the operation of the camera (such as numeric information regarding image count and user status) and that it does not display recorded images.  (Mann Decl. ¶¶ 12-13; Doc. No. 102 at 28.)  However, in its *Markman* Order, the Court construed "display" as "a device capable of displaying recorded images."  (Doc. No. 87 at 16.)  Thus, without use of the EPIC Viewer, there could be no infringement under the Court's construction.

Holmberg asserts that he advanced the theory involving the use of the EPIC Viewer in light of the Court's *Markman* order, and that he provided timely notice to Stealth Cam.  Holmberg submits that on July 22 and 23, 2013, he questioned Stealth Cam witnesses on the EPIC Viewer and how it works, and then timely submitted Smith's August 26, 2013 Expert Report, which contained the infringement theory for "display" that involves the use of the EPIC Viewer.  (Rahlin Decl. ¶ 2, Ex. 4 ("Mann Dep.")

---

[4]     As an example, Stealth Cam cites to Smith's opinion that the EPIC Cameras infringe claim 8 of the '245 Patent (limitation requiring a bow) through inducement.  (*See* Smith Report II ¶¶ 67, 80.)

at 48-51, 65-67, 74, 83-90; *id.* ¶ 2, Ex. 5 ("Cheng Dep.") at 36-37.)   Stealth Cam responded to the new theory in the October 2, 2013 Buckman Expert Report.

The Court agrees with Holmberg that before the Court construed the term "display" as "a device capable of displaying recorded images," it was unnecessary for Holmberg to assert an infringement theory involving the use of the EPIC Viewer in combination with the camera because Holmberg's proposed construction for display was "a device that gives information in a visual form."   Thus, the Court would be inclined not to exclude the revised theory of infringement.   Even so, the issue is moot because, as discussed below, even considering that theory, the Accused EPIC Cameras do not satisfy the "display" limitation as a matter of law.   (*See infra* Section II.B.2.)

Second, Stealth Cam argues that the Court should exclude from evidence any expert opinions or other evidence by Holmberg that supports a theory of infringement under the doctrine of equivalents or indirect infringement.   Stealth Cam points out that Holmberg's claim chart does not contain any suggestion that Holmberg intended to assert indirect infringement, inducement of infringement, or a theory under the doctrine of equivalents.   Then in Smith's August 26, 2013 expert report, Smith includes one paragraph wherein he asserts that if the Accused EPIC Cameras do not literally infringe, "then they would certainly . . . under the doctrine of equivalents have each and every element of the asserted claims, as there would only be insubstantial differences."   (Smith Expert Report I ¶ 72.)   Mr. Smith's November 12, 2013 expert report also contains additional opinions regarding infringement under the doctrine of equivalents and indirect infringement.   (Smith Expert Report II ¶¶ 67, 69, 80.)

10

Holmberg argues that the Court should not exclude his theory of infringement under the doctrine of equivalents.  In particular, Holmberg asserts that he advanced his theory of infringement under the doctrine of equivalents only after Stealth Cam advanced, for the first time, a new theory of non-infringement—that its cameras do not infringe because they are not capable of being *directly* attached to a weapon—in Buckman's October 2, 2013 expert report and its Motion for Summary Judgment on Non-infringement, a theory Holmberg claims is based on a new claim construction.

The Court concludes that the issue of whether Holmberg's infringement theory under the doctrine of equivalents should be excluded is moot because, as explained below, the Court's claim construction does not require direct attachment to a weapon.

Finally, the Court considers Stealth Cam's motion to exclude any theory of indirect infringement or inducement of infringement.  Holmberg argues that the Court should not exclude his theories of induced infringement because Holmberg provided sufficient notice of his inducement claims via specific factual allegations supporting inducement of infringement in his amended complaints.  In addition, Holmberg submits that in his infringement contentions, Holmberg relies on Stealth Cam's manuals and promotional materials, and that Holmberg asked questions during depositions related to inducement.  Thus, Holmberg claims, he provided sufficient notice of inducement claims.

The Court disagrees.  Other than conclusory allegations, the record does not demonstrate that Holmberg fully disclosed or suggested that he intended to pursue a claim for indirect infringement of the Holmberg Patents.  In addition, Holmberg did not disclose any third parties who have directly infringed the Holmberg Patents or how

Stealth Cam induced the direct infringer to infringe.  Thus, the Court concludes that Holmberg is properly precluded from pursuing any theory of indirect or induced infringement.

In sum, with respect to Defendants' Motion to Exclude, the Court grants in part and denies in part as follows:  the motion is denied except that Holmberg is precluded from pursuing any theory of indirect or induced infringement.

## II.    Motion for Summary Judgment

### A.    Legal Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *See Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  As the United States Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

Defendant moves for summary judgment on Holmberg's patent infringement claims.  An infringement analysis has two steps.  First, the Court determines the meaning

and scope of the patent claims asserted to be infringed. *Markman v. Westview Instruments, Inc*., 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Second, the Court compares the properly construed claims to the accused product. *Id*. Claim construction is an issue of law, and infringement is a question of fact. *Monsanto Co. v. Syngenta Seeds, Inc*., 503 F.3d 1352, 1356 (Fed. Cir. 2007). After a *Markman* hearing in this case, the Court construed the disputed claim terms in an Order dated July 15, 2013. (Doc. No. 87.)

The second step, whether literal or under the doctrine of equivalents, involves a question of fact. *Bai*, 160 F.3d at 1353. "Literal infringement of a claim exists when every limitation recited in the claim is found in the accused device, i.e., when the properly construed claim reads on the accused device exactly." *Cole v. Kimberly–Clark Corp*., 102 F.3d 524, 532 (Fed. Cir. 1996). *See also Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1345 (Fed. Cir. 2002). "Thus, a literal infringement issue is properly decided upon summary judgment when no genuine issue of material fact exists, in particular, when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device." *Bai*, 160 F.3d at 1353.

## B.   Stealth Cam's Motion

### 1.   Capable of Being Mounted to a Weapon

As an initial matter, Stealth Cam argues that none of the asserted claims of the Holmberg Patents are infringed as a matter of law because the Accused EPIC Cameras are not capable of being mounted to a weapon for game hunting. Stealth Cam correctly points out that, in its *Markman* Order, the Court ruled that Holmberg "clearly indicated

that the scope of [his] invention was limited to a video camera capable of being mounted to a weapon for use in game hunting." (Doc. No. 87 at 9.) Stealth Cam argues that the Accused EPIC Cameras, as they are made and sold by Stealth Cam, cannot be mounted to a weapon for use in game hunting because they are made and sold with only a mounting plate attached to the bottom of the cameras, and the mounting plate is not designed to be attached to anything other than the mounting accessories offered by Stealth Cam. (Doc. No. 91 at 15.) Stealth Cam further asserts that the mounting plate is not designed to be attached directly to a weapon. (Mann Decl. ¶¶ 10-11 ("This mounting plate is designed to be inserted into one of the mounting accessories offered by Stealth Cam."); Buckman Expert Report ¶ 37.) Stealth Cam asserts that Holmberg's infringement theory is, instead, based on a physical alteration of the Accused EPIC Cameras—requiring the addition of a mounting device (and possibly other devices) to enable the cameras to be mounted on a weapon. In particular, Stealth Cam asserts that the Accused EPIC Camera must be attached to an unidentified structure (some type of mounting device) that is not part of the camera.

Holmberg asserts that nothing in the Court's claim construction order requires a camera to be *directly* attached to a weapon, but only that any infringing device be *capable* of being mounted to a weapon. Moreover, Holmberg asserts that the Holmberg Patents explicitly define an intermediate means (a mount including a track for receiving a mounting rail) that is used to attach a camera of the claimed invention to an object, and that requiring that the camera be *directly* attached to a weapon would result in a reading of the asserted Holmberg Patents that would not cover the embodiments disclosed in the

patents.  Holmberg further argues that the Accused EPIC Cameras are intended to be—

and are in fact capable of—being mounted to a weapon without any alteration.  Holmberg

asserts that the cameras can be mounted to weapons using only the mounting hardware

manufactured and sold by Stealth Cam along with its cameras.

The Court reiterates the ruling in its *Markman* Order that Holmberg limited the

scope of his invention to "a video camera capable of being mounted to a weapon for use

in game hunting."  The Court notes that it did not, however, hold that the claims of the

asserted Holmberg Patents require that the accused cameras be *directly* attached to a

weapon to infringe.  The Court's construction is consistent with the fact that nothing in

the claims, specifications, or drawings of the Holmberg Patents requires that a camera be

directly mounted to an object, and is further consistent with the fact that the Holmberg

Patents define an intermediate means (namely, a mount including a track for receiving a

mounting rail of the camera) that is intended to be used to mount the camera to an object.

(Smith Expert Report II ¶¶ 13-15, 17-20.)   For example, the detailed description of the

'245 Patent contains the following:

> The bracket mounted to a barrel **98** of a firearm is illustrated in FIG. **14**.
> The upper mount member **91** is placed over the top of the barrel **98** of the
> firearm.  The lower mount member **92** is placed under the barrel **98**.
> . . .
>         As FIG. **14** illustrates, the video camera is attached to the mounting
> bracket by sliding the camera mount member **14** into the track of the lower
> mount member **92**. When the camera mount member **14** is positioned far
> enough into the track of the lower mount member **92** it is locked into place.
> This is to ensure that the camera will not inadvertently fall off the weapon.

('245 Patent, c. 5, ll:44-47, 56-61.)   Thus, the Court rejects the argument that the

Accused EPIC Cameras must be directly attached to a weapon in order to infringe.

15

The Court turns to the issue of whether the Accused EPIC Cameras are capable of being mounted to a weapon.  Stealth Cam maintains that its Accused EPIC Cameras, as they are made and sold, cannot be mounted to a weapon for use in game hunting.  Again, Stealth Cam points to evidence that its Accused EPIC Cameras are made and sold only with a mounting plate attached to the bottom of the cameras; that the mounting plate is not designed to be attached to anything other than the mounting accessories offered by Stealth Cam; and that the mounting plate is not designed to be attached to a weapon. (Mann Decl. ¶¶ 10-11; Buckman Expert Report ¶ 37.)  In addition, Stealth Cam asserts that Holmberg has not identified any weapon having, as an integral part, a mounting device to which an Accused EPIC Camera could be directly attached.

Holmberg disagrees and argues that the Accused EPIC Cameras are capable of being mounted to a weapon without any alteration; specifically that the Accused EPIC Cameras can be mounted to a weapon using mounts that are sold by Stealth Cam along with and separately from the Accused EPIC Cameras.  Holmberg also points to evidence that:  advertisements demonstrate that Stealth Cam's Accused EPIC Cameras can mount to various objects, including weapons; Stealth Cam has displayed an Accused EPIC Camera at a trade show mounted to a bow using EPIC mounting hardware; and, all of the Accused EPIC Cameras include a mounting rail, demonstrating that the cameras are intended to be mounted to something.  (Smith Report II ¶¶ 5, 6-7 & Ex. 6.)[5]  In addition,

---

[5]       Stealth Cam objects to much of this evidence on the grounds that the advertisements relied on appear to have been created by third-parties.  Even if the (continued on next page…)

Holmberg puts forth evidence that the Accused EPIC Cameras are sold in kits that include mounting hardware.  (*Id*. ¶ 10 & Ex. 9.)

Here, Stealth Cam focuses on the fact that the EPIC mounting devices are separate accessories and claims that they are not part of the structure of the Accused EPIC Cameras.  Instead, Stealth Cam argues that Holmberg's infringement theory requires the attachment of other products to the Accused EPIC Cameras (such as a mounting device), and that such attachment constitutes a modification or alteration that precludes a finding of infringement.  In support, Stealth Cam relies heavily on *High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc*., 49 F.3d 1551 (Fed. Cir. 1995).  In *High Tech*, the Federal Circuit concluded that "a device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim." *Id*. at 1555.  The Federal Circuit considered a claim relating to a handheld endoscope designed for use in dental work and comprised of a body member and a camera disposed in the body member, where the camera could be rotated within the housing.  *Id*. at 1553. The accused product was a camera fixed within a housing by two set screws that prevented rotation, but by loosening the screws, the camera could be rotated.  *Id*.  The Federal Circuit reversed the grant of the patent holder's motion for a preliminary injunction, holding that "as designed, sold, and intended for use, the [allegedly infringing] camera is rigidly coupled to its housing.  The original and intended operating

---

(…continued from previous page)
challenged evidence were properly excluded, the Court's decision below would be the same.

configuration of the device must be altered—by loosening the set screws—in order for the camera to rotate." *Id*. at 1555.

In *High Tech*, the Federal Circuit considered whether: (1) the accused product was designed to be altered to infringe; (2) there was any reference to the infringing use in the accused product's promotional materials; (3) the alteration would serve any functional purpose not already accomplished by other means; and (4) whether there was evidence that any user altered the accused product prior to or during actual use. *Id*. at 1556. Consideration of those factors, here, leads the Court to conclude that fact issues exist as to whether the use of mounting hardware constitutes a physical alteration of the cameras. The record contains evidence that Stealth Cam's Accused EPIC Cameras are designed and intended to be mountable to a weapon (or another object). While Stealth Cam submits that the cameras are complete, functional cameras without a mount, there is also record evidence that could lead a reasonable juror to find that the cameras are not intended to operate without being mounted to an object. For example, Holmberg has submitted evidence that the Accused EPIC Cameras are "designed and configured to be mounted on an Epic mounting accessory." (Mann Decl. ¶ 11.) In addition, there is evidence suggesting that the Accused EPIC Cameras, which are small (with "thumb-size" dimensions) are not intended to be used without mounting the camera to some object, but instead are designed to be mounted so that the operator has two free hands to engage in whatever activity is being filmed.

For these reasons, the Court concludes that the use of Stealth Cam's mounting hardware to mount the Accused EPIC Cameras to a weapon does not, as a matter of law,

constitute a physical alteration of the Accused EPIC Cameras so as to preclude infringement.  Instead, there is sufficient evidence in the record to lead a reasonable juror to conclude that the use of mounting hardware to mount an Accused EPIC Camera to a weapon does not constitute a physical alteration of the camera.[6]

In light of the determination that the Holmberg Patents do not require the camera to be directly mounted to a weapon, and viewing the evidence in the light most favorable to Holmberg, a reasonable finder of fact could also conclude that the Accused EPIC Cameras are "capable of being mounted to a weapon."  Therefore, Stealth Cam's motion for summary judgment as to this claim limitation is denied.

## 2.    Display

Stealth Cam argues that numerous asserted claims of the Holmberg Patents are not infringed as a matter of law because the Accused EPIC Cameras do not contain a display device capable of displaying recorded images.  Specifically, the "display" or "liquid crystal display" limitation appears in the following asserted claims:  claims 1-17 of the '793 Patent; claims 1-9, 16, 20 of the '038 Patent; and claims 10-19 of the '196 Patent.

The Court previously construed the meaning of the term "display" as it appears in the asserted claims as "a device capable of displaying recorded images."  (Doc. No. 87

---

[6]    Stealth Cam also argues that the Accused EPIC Cameras include a "mounting plate" located on the bottom of the camera that is designed to be inserted into an EPIC mounting accessory, not a weapon.  (Mann Decl. ¶ 11.)  However, as discussed above, the claims do not require that the camera be directly attached to the weapon.

at 16.)  In addition, the term "liquid crystal display" as it appears was construed as "a liquid crystal device capable of displaying recorded images."  (*Id.*)

There is no dispute that the only display device located on the Accused EPIC Cameras does *not* display recorded images; instead, it only displays information about the operation of the camera (such as numeric information regarding image count and user status).  (Mann Decl. ¶¶ 12-13; Doc. No. 102 at 28.)  Even so, Holmberg asserts that the Accused EPIC Cameras meet the "display" requirement because Stealth Cam offers an accessory (the EPIC Viewer) that can be used with its Accused EPIC Cameras, making it capable of displaying recorded images.  The EPIC Viewer can be connected to an Accused EPIC Camera with an A/V cable that is sold with the EPIC Viewer.  (Mann Decl. ¶ 14; Smith Report II ¶ 25.)  When connected to the EPIC Camera, the EPIC Viewer allows a user to preview a picture that the camera is about to capture or allows the user to review videos or pictures already taken.  (Mann. Decl. ¶ 15.)

After careful review of the evidence submitted, the Court concludes that the Accused EPIC Camera, even when used with the EPIC Viewer, does not satisfy the "display" limitation as a matter of law.  The record contains evidence showing that the Accused EPIC Cameras are independent and functional products that operate as intended without an EPIC Viewer.  (*Id.* ¶¶ 15-16; Buckman Expert Report ¶¶ 54-56.)  Unlike with the limitation "capable of being mounted on a weapon" above, the Court concludes that the *High Tech* rule applies here because there is no record evidence demonstrating that it is practicable for users of the Accused EPIC Cameras to use the cameras in conjunction with the EPIC Viewer to view recorded images while the viewer is mounted to a weapon.

There is no dispute that the EPIC Viewer must be connected to the Accused EPIC Camera by an A/V Cable.  To make this connection *and* maintain it while the camera and viewer are mounted to a weapon would require additional structure.

Viewing the record in the light most favorable to Holmberg, the Court agrees with Stealth Cam that there is no genuine issue of material fact with respect to the infringement of claims containing the "display" or "liquid crystal display" limitation.  No reasonable juror could conclude that the display limitation is found in the Accused EPIC Cameras.  Therefore, the asserted claims that contain the "display" or "liquid crystal display" limitations are not infringed as a matter of law, and Stealth Cam's motion for summary judgment as to the "display" and "liquid crystal display" limitations is granted.

### 3.     Mounting Rail

Stealth Cam argues that numerous asserted claims of the Holmberg Patents are not infringed because the Accused EPIC Cameras do not contain a mounting rail for mounting the camera to a weapon.  The following claims contain a "mounting rail for mounting the camera to a weapon" limitation:  claims 1 and 10 of the '793 Patent; claims 19 and 20 of the '038 Patent; and claims 1 and 19 of the '196 Patent.   For example:

> **10.**  A camera for mounting to a functional weapon, the camera comprising . . . a mounting rail extending along the housing from the front end toward the rear end, the mounting rail for mounting the camera to the functional weapon.

('793 Patent, c. 7, ll: 3-9.)  In addition, several dependent claims incorporate this limitation.  In the *Markman* Order, the Court construed "mounting rail" to mean "an elongated structural member with a cross-section shaped to correspond to a track in a

mount to permit longitudinal sliding movement into and out of the track in the mount."
(Doc. No. 87 at 23.)

Stealth Cam relies on its argument that the Accused EPIC Cameras are not capable
of being mounted directly to a weapon, and therefore, that the Accused EPIC Cameras do
not contain a mounting rail for mounting the camera to a weapon.  (Doc. No. 91
at 25-26.)  Stealth Cam acknowledges that the Accused EPIC Cameras have a mounting
plate attached to the bottom of the cameras that is designed to be coupled to a mounting
device, but maintains that its cameras do not have a mounting device for the attachment
of the cameras to a weapon.  Stealth Cam further asserts that Holmberg has not put forth
evidence of any weapon with a mounting device to which the mounting plate of the
Accused EPIC Cameras can be directly attached.   (Buckman Expert Report ¶¶ 66-67.)
Stealth Cam argues that to attach an Accused EPIC Camera to a weapon, some
unidentified structure (such as a mounting device) must be attached to the weapon, *not*
the camera.  (*Id*. ¶¶ 68-69.)

Holmberg disagrees and claims that the Accused EPIC Cameras include a
mounting rail on the bottom of their cameras that is designed to slide into any EPIC
mount.  (Doc. No. 102 at 31.)  Holmberg asserts that Stealth Cam's interpretation of
"mounting rail" is inconsistent with the *Markman* Order, and that the Holmberg Patents
teach the use of an intermediate structure that receives a "mounting rail."

The Court concludes that Holmberg has submitted sufficient evidence that could
lead a reasonable juror to find that the Accused EPIC Cameras contain a mounting rail.
In particular, Holmberg submits evidence that the Accused EPIC Cameras are capable of

being attached to a weapon by using a mounting rail that slides into and out of a track in the mount.  As stated above, the claims do not require a camera to be directly attached to a weapon.  Moreover, the Holmberg Patents provide for the attachment of a camera to an object through an intermediate structure, such as a mount.  Accordingly, Stealth Cam's motion for summary judgment as to this claim limitation is denied.

### 4.     Mount for Receiving a Mounting Rail

Claim 1 of the '196 Patent and Claim 8 of the '245 Patent both contain the following limitation:  "a mount for receiving the mounting rail."  Stealth Cam asserts that although the Accused EPIC Cameras contain a mounting plate attached to the bottom of the camera that is designed to be coupled to a mounting device, the Accused EPIC Cameras do not contain a mount for receiving a mounting rail.   Stealth Cam further points out that there is no evidence of any weapon having, as an integral part, a mounting device to which the Accused EPIC Cameras could be directly attached.  In addition, Stealth Cam maintains that the fact that it is possible to modify or alter the Accused EPIC Cameras by adding a mount (that is sold separately by Stealth Cam) is not enough to establish infringement.  Thus, Stealth Cam contends that the Accused EPIC Cameras do not satisfy this limitation as a matter of law.

Holmberg disputes this, again arguing that the claims do not require a camera to be directly attached to a weapon.  Holmberg reiterates that the Holmberg Patents all demonstrate that a camera of the claimed invention is mounted to an object (i.e., weapon) through an intermediate means, and therefore that the cameras do not directly attach to a weapon.  Holmberg further asserts that because the Accused EPIC Cameras include

mounting rails that attach to mounts (which are sold separately and in kits along with the cameras), the accused products meet the "mount for receiving the mounting rail" limitation.

The Court concludes that Holmberg has submitted sufficient evidence that could lead a reasonable juror to find that the Accused EPIC Cameras contain "a mount for receiving the mounting rail." As discussed above, the claims do not require that the camera be directly attached to a weapon. In addition, there is evidence in the record that is sufficient to demonstrate that the Accused EPIC Cameras are action cameras, designed to take video while mounted to something (handle bar, wrist, helmet, weapon, etc.). Further, there is evidence in the record that is sufficient to demonstrate that the Accused EPIC Cameras are designed and configured to be mounted to an EPIC mounting accessory, and that the products would not be operable for their intended use without a mount. (Mann Decl. ¶ 11.)

For the above reasons, the Court denies Stealth Cam's motion for summary judgment as to "mount for receiving the mounting rail" limitation.

### 5.    Claim 8 of the '245 Patent

Claim 8 of the '245 Patent reads as follows:

> **8**.    A video camera recorder in combination with a bow comprising:
> a main camera body having a front and back end;
> a bow; and
> a means for mounting the main camera body to a counter weight bar of the bow whereby a hunter can monitor and record a hunt.

('245 Patent c. 8, ll: 43-49.) Stealth Cam argues that this claim is not infringed, as a

matter of law, because the Accused EPIC Cameras:  are not combined with a bow;

do not have a means for mounting the main camera body to a counterweight bar of the

bow; and do not have a means whereby a hunter can monitor and record a hunt.

Claim 8 of the '245 Patent contains the following limitation:  "A video camera

recorder in combination with a bow."  There is no dispute that the Accused EPIC

Cameras, as made and sold by Stealth Cam, are not combined with a bow.  Even so,

Holmberg asserts that Stealth Cam induced infringement of claim 8 by advertising that

the Accused EPIC Cameras are *capable* of being mounted to a bow and because Stealth

Cam knew that customers using the Accused EPIC Cameras mounted to a bow would

infringe.  In support, Holmberg points to evidence of Stealth Cam's trade show

demonstrations, video advertising, and advertising on its packaging for its EPIC products.

"Whoever actively induces infringement of a patent shall be liable as an

infringer."  35 U.S.C. § 271(b).  Holmberg claims Stealth Cam induced customers to

infringe the '245 Patent.  The elements of inducement are:  (1) direct infringement by a

third party; (2) the inducer's "knowledge of acts alleged to constitute infringement"; and

(3) the inducer's "specific intent and action to induce infringement."  *DSU Med. Corp. v.*

*JMS Co. Ltd.*, 471 F.3d 1293, 1305-06 (Fed. Cir. 2006).  "Hypothetical instances of direct

infringement are insufficient to establish vicarious liability of indirect infringement."

*ACCO Brands, Inc. v. ABA Locks Mfr. Co., Ltd.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007).

The Court concludes that Holmberg's claim of infringement of claim 8 of the '245

Patent fails for two primary reasons.  First, as discussed above, Holmberg did not assert

indirect infringement in its claim chart.  Therefore, Holmberg is precluded from asserting

that theory of infringement now.  Second, Holmberg has not presented sufficient

evidence that Stealth Cam induced a third party to engage in direct infringement of claim

8 of the '245 Patent.  Accordingly, the Court grants Stealth Cam's motion for summary

judgment as to this limitation.

Because Holmberg's infringement claim as to claim 8 of the '245 Patent fails as a

matter of law, the Court need not address Stealth Cam's additional arguments on

non-infringement.  Even so, the Court notes that claim 8 of the '245 Patent also contains

the following limitation:  "whereby a hunter can monitor and record a hunt."  In the

*Markman* Order, the Court construed this term as "whereby a hunter can use the camera

to view and record a hunt."  (Doc. No. 87 at 12.)  The Court already concluded that, as a

matter of law, the Accused EPIC Cameras do not contain a "display" capable of

displaying recorded images.  Therefore, it follows that the Accused EPIC Cameras do not

contain the limitation "whereby a hunter can monitor and record a hunt."[7]

## ORDER

Therefore, **IT IS HEREBY ORDERED** that:

1.     Defendant's Motion for Summary Judgment (Doc. No. [89]) is **GRANTED**

**IN PART** and **DENIED IN PART** as follows:

---

[7]     Holmberg also asks the Court to clarify the scope of the *Markman* Order to remove any implication that the scope of the invention in claim 10 of the '038 Patent and claims 1 and 10 of the '196 patent is limited to a "video camera capable of being mounted to a weapon for use in game hunting."  The Court defers ruling on this issue until the issue can be more fully addressed by both parties.

a.      Stealth Cam's motion for summary judgment as to the claim limitation "capable of being mounted to a weapon" is **DENIED**.

b.      Stealth Cam's motion for summary judgment as to the claim limitations "display" and "liquid crystal display" is **GRANTED**.

c.      Stealth Cam's motion for summary judgment as to the claim limitation "mounting rail" is **DENIED**.

d.      Stealth Cam's motion for summary judgment as to the claim limitation "a mount for receiving a mounting rail" is **DENIED**.

e.      Stealth Cam's motion for summary judgment as to claim 8 of the '245 Patent is **GRANTED**.

2.      Defendant's Motion to Exclude (Doc. No. [108]) is **GRANTED IN PART** and **DENIED IN PART** as follows:  The motion is denied except that Holmberg is precluded from pursuing any theory of indirect or induced infringement.


Dated:  April 18, 2014                    s/Donovan W. Frank
                                          DONOVAN W. FRANK
                                          United States District Judge