# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Larry Holmberg,                                    Civil No. 11-248 (DWF/LIB)

        Plaintiff,

v.                                                 **MEMORANDUM**
                                                   **OPINION AND ORDER**

Stealth Cam, LLC,

        Defendant.

## INTRODUCTION

This matter is before the Court on Plaintiff Larry Holmberg's ("Plaintiff") Motion to Alter or Amend the Judgment Entered to Remove any Judgment Relating to Noninfringement of the '038 Patent (Doc. No. 259); Plaintiff's Motion for Judgment as a Matter of Law on Infringement of the '038 Patent (Doc. No. 261); Plaintiff's Motion for Judgment as a Matter of Law on Infringement of the '196 Patent (Doc. No. 263); Plaintiff's Motion for Judgment as a Matter of Law on Validity of the '196 Patent (Doc. No. 266); Plaintiff's Motion for Judgment as a Matter of Law on Validity of the '038 Patent (Doc. No. 268); Plaintiff's Motion for Judgment as a Matter of Law on Damages (Doc. No. 270); Plaintiff's Motion for Judgment as a Matter of Law on Willful Infringement (Doc. No. 280); Defendant Stealth Cam, LLC's ("Defendant") Rule 50(b) Renewed Motion of Judgment as a Matter of Law of No Damages (Doc. No. 276); Defendant's Rule 50(b) Renewed Motion for Judgment as a Matter of Law of No Willful Infringement (Doc. No. 283); and Defendant's Motion for Attorney's Fees (Doc. No. 291). For the reasons set forth below, the Court grants Plaintiff's Motion to Alter or

Amend the Judgment to Remove any Judgment as a Matter of Law on Infringement of the '038 Patent and denies all remaining motions.

## BACKGROUND

On February 1, 2011, Plaintiff filed this lawsuit against Defendant, alleging infringement of U.S. Patent No. 7,880,793, entitled "Camera with Mounting Rail" (the "'793 Patent"). (Doc. No. 1, Compl.) On August 17, 2011, Plaintiff amended his Complaint, adding a claim for infringement of U.S. Patent No. 6,556,245, entitled "Game Hunting Video Camera" (the "'245 Patent"). (Doc. No. 25, Am. Compl.) On January 17, 2012, Plaintiff filed a Second Amended Complaint, adding claims for infringement of U.S. Patent No. 8,045,038, entitled "Video Camera with Mount" (the "'038 Patent"), and U.S. Patent No. 8,059,196, entitled "Camera for Mounting" (the "'196 Patent"). (Doc. No. 42, Second Am. Compl.) The four patents-in-suit all relate to a video camera with a mounting apparatus (collectively referred to as the "Holmberg Patents").

Defendant manufactures and sells digital cameras and accessories for outdoor pursuit applications, including lightweight digital video cameras for use during activities such as biking, paddling, and snowboarding. In or around 2008, Defendant introduced the EPIC Action Sports Video Camera, a portable digital video camera that can be mounted to various objects, such as helmets, handlebars, arms, or boots. The accused products include various video cameras (the "EPIC cameras" or "EPIC products"). Defendant also offers various accessories for its EPIC cameras, such as adjustable hardware mounts, waterproof housing, hat clip mounts, strap mounts, tree screws, and shock absorbing pads.

On July 15, 2013, the Court issued a *Markman* order, construing the contested claim terms.  (Doc. No. 87.)  On April 18, 2014, the Court granted in part and denied in part a motion for summary judgment of non-infringement brought by Defendant.  (Doc. No. 121.)  In light of the *Markman* order and the order on Defendant's motion for summary judgment, Plaintiff indicated that he would simplify and narrow the issues for trial and, accordingly, would not put forth evidence as to infringement of the '275 and '793 Patents.  (Doc. No. 128 at 1, n.1.)  The case proceeded to trial on November 25, 2014, and after seven days of trial, a jury reached a verdict.  (Doc. No. 252 ("Special Verdict").)  The jury determined that the asserted claims of the '038 Patent were invalid and that Defendant did not infringe any of the asserted claims of the '196 Patent.  (*Id.*)  On December 16, 2014, the Court entered final judgment stating:  (1) Plaintiff did not prove by a preponderance of the evidence that Defendant literally infringed any asserted claim of the '038 Patent; (2) Plaintiff did not prove by a preponderance of the evidence that Defendant literally infringed any asserted claim of the '196 Patent; and (3) the asserted claims of the '038 Patent were invalid as obvious.  (Doc. No. 258.)

The Court notes that there were errors with the Special Verdict that required clarification on the record.  First, while the jury answered "no" to the question of whether Plaintiff had proved direct infringement of the asserted claims of the '038 Patent, the jury manually wrote in:  "No claims infringed based on invalidity of '038."  (Special Verdict at 1.)  The foreperson clarified that the jury did not reach the issue of direct infringement

of the '038 Patent.  (Doc. No. 246, Trial Tr. Vol. 7 at 1410.)[1]  Second, while the jury

wrote "no" to the questions regarding whether Defendant proved that the '038 Patent was

invalid, the foreperson also clarified that this was a mistake and should have been

answered "yes."  (*Id*. at 1411.)

The Court considers the various post-trial motions below.

## DISCUSSION

## I.   Motion to Alter or Amend Judgment Relating to Non-Infringement of the '038 Patent

Plaintiff moves to alter or amend the judgment entered to remove any judgment

relating to non-infringement of the '038 Patent under Federal Rule of Civil

Procedure 59(e).  In support, Plaintiff contends that the jury did not consider

infringement of the '038 Patent because it found that the '038 Patent was invalid, and

therefore that the Court should remove any judgment relating to non-infringement of the

'038 Patent.

Defendant opposes the motion.  First, Defendant argues that Plaintiff waived his

right to seek such relief.  Specifically, Defendant contends that Plaintiff failed to object to

the inconsistency between the jury verdict and the jury's explanation of that verdict

before the jury was discharged and, therefore, cannot raise the objection now.  Instead,

Defendant argues that Plaintiff was obligated to request that the Court have the jury

resume deliberation.  In addition,  Defendant argues that, for reasons argued in its

opposition to Plaintiff's motion for judgment as a matter of law on infringement of the

---

[1]      The transcript of the trial can be found at Docket Numbers 240-47, Vols. 1-7, respectively.  The Court will refer to the transcript by volume number.

'038 Patent (discussed below), Plaintiff has not submitted sufficient evidence to fulfill his

burden of proving infringement of the asserted claims of the '038 Patent.

> The jury's Special Verdict was initially read into the record as follows:

> First Question:  "We, the jury in the above-entitled matter make the following unanimous findings:

> Question 1.  "Direct Infringement of the '038 Patent."  And what is written, in addition to all no's in the right-hand column is, "No claims infringe based on invalidity of the '038 Patent."

> Question No. 2, "Direct Infringement of the '196 Patent," all answers are "no," from Claims 1 through Claim 20.

> And then consequently, the other questions on willful infringement and damages have not been filled out.

(*Id.* at 1399.)  The Court then polled the members of the jury, who all affirmatively

acknowledged that this was their verdict, and the Court subsequently excused the jury.

(*Id.* at 1400-01.)  The Court then handed the attorneys a copy of the verdict forms, made

some comments, and adjourned.  (*Id.* at 1403.)  After adjourning, Plaintiff's attorney

noted inconsistencies in the Special Verdict and the Court returned and allowed the

attorneys to speak on the record.  Plaintiff's attorney stated:

> I think, actually, given, obviously, the answer to No. 5 is in conflict with No. 1.  But, I think, also, if this verdict is filled out properly, they can't dodge the question of whether the claims infringe, because otherwise we have no way of knowing.

(*Id.* at 1404-05.)  In Question 5, the jury initially answered "no" to whether Defendant

proved by clear and convincing evidence that any of the asserted claims of the '038

Patent were invalid because of obviousness.  (Special Verdict at 3.)  Because of the

seeming inconsistency with the jury's notation on Question 1 ("No claims infringe based

on invalidity of '038"), the Court called the jury back into the courtroom and had the

jurors confirm that they found claims 10 and 13-19 of the '038 invalid as obvious and, on

that basis, did not consider the issue of infringement of the '038 Patent.  (*Id.* at 1408,

1410-13.)  The foreperson stated:

> No, I don't think we can say that we considered infringement, because we
> determined that the patent, itself, was invalid.  So, we felt like the question,
> each claim we had to answer no, based on the fact that we didn't think there
> was a valid patent.

(*Id.* at 1408.)  After this answer, there was a sidebar, during which the following

exchange occurred:

> [PLAINTIFF'S COUNSEL]:  There can't be a finding of no infringement.
> Those questions are separate.  And once again, it leaves us in a position
> where we don't – well, we now know that there is, but we don't know what
> the outcome is. . . .

> [DEFENDANT'S COUNSEL]:  Well, I think, Your Honor, the jury need
> not reach the infringement question.  It does sound like they did not
> substantively review it, but in view of the invalidity finding, I think the
> judgment can stand as to no infringement of the '196 and invalidity of '038.

> And although we had intended obviously a decision as to infringement of
> the '038, I don't think it compromises their judgment or puts the jury
> verdict in question.

> THE COURT:  Well I think where that leaves us is this.  We can't, unless
> you want me to be persuaded otherwise, this jury is done.  The question
> maybe is whether we have got – I may follow-up with one or two other
> questions to make sure on the '196, but obviously it looks like we are going
> to have the Defendant saying we have a valid verdict.  We will have
> Plaintiff saying we have mistrial material here.

> [PLAINTIFF'S COUNSEL]:  Yeah.

> THE COURT:  But I don't think there is a circumstance under which,
> without being fair to both of you and the jury that I can say:  Well, we are
> now going to start over again and send you back to deliberate.

[PLAINTIFF'S COUNSEL]:  I don't see that on a practical level that that is going to get us anything that is meaningful.

THE COURT:  No, no, I don't either.  So, there might be a disagreement and I will have to decide that on what this all means and whether it is a valid verdict or not. Okay?

(*Id.* at 1408-10.)

The Court then asked the jury some questions, polled the jury again, and excused the jury.  (*Id.* at 1414.)  After the jury was excused, Plaintiff's counsel stated:

Well, we certainly will be making post-trial motions.  We will be renewing the motions that we have made.  We don't believe that a reasonable jury could have reached the verdict, whichever version of the verdict we are dealing with here—and certainly the most recent one.

This also leaves us without an answer to the infringement of the '038 Patent, which is unfortunate because it would give us a great deal of information as to what the issue was with respect to the '196 Patent.  So, it puts us in about the worst possible world going forward with this and even presenting it at the appellate level if that becomes necessary.  So, we certainly—I don't know that—hadn't really contemplated the issue of a mistrial as one of the options and I certainly don't want to waive that as a possibility as we have a chance to consider this verdict.

(*Id.* at 1414-15.)

Based on the record made at trial, the Court finds that Plaintiff did timely object to the inconsistencies in the verdict and that the inconsistencies were resolved when the Court asked the jury about their verdict.  In addition, there is no dispute that the jury found the '038 Patent to be invalid, but did not substantively consider infringement of the '038 Patent.  In addition, the Court agrees with Plaintiff that there cannot be a judgment that the '038 Patent was not infringed because the jury did not consider infringement of

the '038 Patent.  Thus, the Court grants Plaintiff's motion removing judgment relating to

non-infringement of the '038 Patent.

## II.    Motions for Judgment as a Matter of Law or New Trial

A court may render judgment as a matter of law ("JMOL") when "a party has been

fully heard on an issue during a jury trial and the court finds that a reasonable jury would

not have a legally sufficient evidentiary basis to find for that party on that issue."  Fed. R.

Civ. P. 50(a).  Under Rule 50, JMOL is appropriate if no reasonable juror could have

returned a verdict for the nonmoving party.  *Weber v. Strippit, Inc.*, 186 F.3d 907, 912

(8th Cir. 1999).  In analyzing a Rule 50 motion, a court must consider the evidence in the

light most favorable to the non-moving party, resolve all factual conflicts in the

non-moving party's favor, and give the non-movant the benefit of all reasonable

inferences.  *Id*.  "[J]udgment as a matter of law is proper when the record contains no

proof beyond speculation to support the verdict."  *Heating & Air Specialists v. Jones*, 180

F.3d 923, 932-33 (8th Cir. 1999).[2]  In ruling on a renewed motion for judgment as a

matter of law, a court analyzes "whether the record contains sufficient evidence to

support the jury's verdict."  *Bass v. Gen. Motors Corp.*, 150 F.3d 842, 845 (8th Cir.

1998).

Under Rule 59, a "court may, on motion, grant a new trial on all or some of the

issues—and to any party . . . after a jury trial, for any reason for which a new trial has

---

[2]      The grant or denial of a motion for judgment as a matter of law is governed by the law of the regional circuit.  *See ClearValue, Inc. v. Pearl River Polymers, Inc.*, 668 F.3d 1340, 1343 (Fed. Cir. 2012).

heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a).

"[D]istrict courts enjoy broad discretion in choosing whether to grant a new trial." *Pulla*

*v. Amoco Oil Co.*, 72 F.3d 648, 656 (8th Cir. 1995). The standard for granting a new trial

is whether the verdict is against "the great weight of the evidence." *Butler v. French*,

83 F.3d 942, 944 (8th Cir. 1996). The Eighth Circuit explained that:

> [A] trial court may not grant a new trial simply because the trial court
> would have found a verdict different from the one the jury found. This is
> certainly a necessary condition to granting a motion for new trial, but it is
> not a sufficient one. Rather, the trial court must believe, as we have already
> said, that the verdict was so contrary to the evidence as to amount to a
> miscarriage of justice.

*Id.* In addition, a new trial is appropriate where legal errors at trial result in a miscarriage

of justice. *Gray v. Bicknell*, 86 F.3d 1472, 1480-81 (8th Cir. 1996). Thus, a new trial is

merited when "the verdict is so contrary to the preponderance of the evidence as to imply

that the jury failed to consider all the evidence, or acted under some mistake." *In re*

*Levaquin Prods. Liab. Litig.*, 700 F.3d 1161, 1166 (8th Cir. 2012) (internal citations and

quotations omitted). Evidentiary errors warrant a new trial only when "the cumulative

effect of the errors is to substantially influence the jury's verdict." *Williams v. City of*

*Kan. City, Mo.*, 223 F.3d 749, 755 (8th Cir. 2000).

## A.    Infringement of the '038 Patent

"To establish literal infringement, every limitation set forth in a claim must be

found in an accused product, exactly." *Southwall Techs. v. Cardinal IG Co.*, 54 F.3d

1570, 1575 (Fed. Cir. 1995). On JMOL, a jury's determination of the factual issue of

infringement is reviewed for "substantial evidence." *ACCO Brands, Inc. v. ABA Locks*

*Mfr. Co., Ltd.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1105-06 (Fed. Cir. 1996).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1269 (Fed. Cir. 1999) (internal quotation omitted).

Plaintiff renews his motion for JMOL, or in the alternative a new trial, on the issue of infringement of the '038 Patent.  The asserted claims of the '038 Patent include claims 10, 13-15, and 17-19.  As an initial matter, the Court notes that each asserted claim of the '038 Patent is limited to "a video camera capable of being mounted to a weapon for use in game hunting."[3]  (*See, e.g.*, Doc. No. 87 at 9; Doc. No. 121 at 15.)

Plaintiff argues that he fulfilled his burden of proving that the accused EPIC products infringe the '038 Patent.  In particular, Plaintiff submits that he provided sufficient evidence that the accused EPIC cameras are capable of being mounted to a weapon for use in game hunting, primarily through the testimony of lay witness Larry Holmberg and expert witness Fred Smith ("Mr. Smith"), as well as evidence of advertising and promotional material that depict the accused cameras mounted on weapons.  Plaintiff also contends that Smith testified that each element of the asserted

---

[3]     Plaintiff also seeks to clarify that claims 10, 13-15, and 17-18 of the '038 Patent and claims 1-9 and 20 of the '196 Patent do not require "a video camera capable of being mounted to a weapon for use in game hunting."  Plaintiff previously sought the same clarification in a motion *in limine*, which was denied.  (Doc. No. 198.)  In denying that motion, the Court reiterated "that Plaintiff emphasized, in both the patent specification and prosecution history, that the invention was limited to a video camera capable of being mounted to a weapon for use in game hunting."  (*Id.* at 2.)  The Court, again, denies Plaintiff's request for clarification.

claims of the '038 Patent was met by the accused EPIC cameras.  In addition, Plaintiff

contends that Defendant presented insufficient evidence that the accused EPIC products

do not infringe the '038 Patent, and in particular that Defendant's expert, Dr. Bruce A.

Buckman ("Dr. Buckman"), did not provide testimony to establish that the accused EPIC

cameras are not capable of withstanding recoil associated with firing a weapon or

evidence that the accused EPIC products cannot be used in game hunting because they do

not contain illumination.  Plaintiff also argues that evidence from Defendant's lay

witnesses on this issue was not tested.  In short, Plaintiff contends that he met his burden

of proving that the accused EPIC cameras are capable of being mounted to a weapon for

use in game hunting and that no reasonable jury could find that the accused EPIC

cameras are not so capable.

Defendant argues that the evidence upon which Plaintiff relies to show that the

accused EPIC cameras are "capable of use in game hunting" does not compel JMOL in

Plaintiff's favor on infringement of the '038 Patent.  In particular, Defendant points out

that Plaintiff cites to:  (1) his own testimony in which he claims he attached EPIC

cameras to weapons and fired the weapons; (2) his own testimony regarding photos he

took at a trade show allegedly showing an accused EPIC camera mounted to a bow;

(3) evidence presented by Smith, wherein Smith created a video of himself shooting a

rifle to demonstrate that the accused EPIC cameras could withstand the recoil; and

(4) advertisements that depict an EPIC camera mounted to weapons.  Defendant argues

that this evidence does not support a finding by a reasonable jury that the EPIC cameras

are capable of being mounted to a weapon for use in game hunting.  Defendant also

argues that Plaintiff has failed to show that the accused EPIC cameras meet the remaining elements of the asserted claims of the '038 Patent and, in particular, that Plaintiff has failed to establish that the accused EPIC cameras meet the "extending parallel" claim limitation of asserted claims 10 and 19.

Having carefully reviewed the record in this case, the Court concludes that Plaintiff is not entitled to JMOL on the issue of infringement of the '038 Patent.  First, Plaintiff argues that he has provided sufficient evidence at trial to prove that the accused EPIC cameras are capable of being mounted to a weapon for use in game hunting and that Defendant's evidence is not sufficient to show that the EPIC products are not capable of being mounted to a weapon for use in game hunting.  While Plaintiff has pointed to evidence regarding the limitation of being capable of being mounted to a weapon for use in game hunting, this evidence does not compel a finding that, as a matter of law, the accused EPIC cameras meet this limitation.  Indeed, considering the evidence submitted at trial as a whole, the Court concludes that a reasonable jury could conclude that the accused EPIC cameras are not capable of being mounted to a weapon for use in game hunting.  In addition, Plaintiff references the testimony of Smith, wherein Smith stated that each element of each of the asserted claims was present in the accused EPIC cameras (*see* Trial Tr. Vol. 3 at 437-48), however, that testimony does not compel judgment of infringement as a matter of law.  For these reasons, Plaintiff is not entitled to JMOL.

The Court also concludes that Plaintiff is not entitled to a new trial on the issue of infringement of the '038 Patent.  Plaintiff seeks a new trial based on the fact that the jury did not consider the issue of infringement.  However, while the jury failed to reach the

issue of infringement, the jury determined that the '038 Patent was invalid.  That the jury

chose to find the '038 Patent invalid and not reach the issue of infringement does not

constitute a manifest error that would warrant a new trial.

### B.      Infringement of the '196 Patent

The jury found that there was no infringement of any of the claims 1-9 and 20 of

the '196 Patent.  (Special Verdict at 2.)  As discussed above, each asserted claim of the

'196 Patent is limited to "a video camera capable of being mounted to a weapon for use

in game hunting."  Again, to establish infringement, Plaintiff must prove that every

limitation set forth in an asserted claim is found in an accused EPIC camera, *Southwall

Techs.*, 54 F.3d at 1575, and on JMOL, a jury's determination of the factual issue of

infringement is reviewed for "substantial evidence," *ACCO Brands, Inc.*, 501 F.3d at

1312.

Plaintiff renews his motion for JMOL or, in the alternative, for a new trial, on the

issue of infringement of the '196 Patent.  Plaintiff argues that he is entitled to JMOL

because he met his burden of proving infringement of the '196 Patent, specifically that no

reasonable jury could find that:  (1) the accused EPIC cameras are not capable of being

mounted to a weapon for use in game hunting; (2) the accused EPIC cameras do not

contain a mount; and (3) the accused EPIC cameras do not contain a "mount for receiving

the mounting rail."  Plaintiff also submits that his expert testified and demonstrated to the

jury that the accused EPIC products met every limitation in each asserted claim of the

'196 Patent.

In the alternative, Plaintiff argues that he is entitled to a new trial on infringement of the '196 Patent on the following grounds:  (1) the claim construction of "mount for receiving the mounting rail" is improper under the law; (2) all of Dr. Buckman's testimony on the "mount for receiving the mounting rail" means-plus-function analysis was at odds with the law and the jury instructions; (3) all of Dr. Buckman's testimony violated the Court's orders on pretrial motions; (4) Defendant's counsel presented a closing argument at odds with the law and jury instructions and in violation of the Court's order on Defendant's own motion *in limine*; and (5) the jury showed confusion as to the analysis of the "mount for receiving the mounting rail" limitation.  Defendant opposes Plaintiff's motion for a new trial, arguing that there was no prejudicial error of law and the verdict is not contrary to the evidence.

As an initial matter, for the same reasons discussed above with respect to infringement of the '038 Patent, the Court concludes that a reasonable jury could conclude that the accused EPIC cameras are not capable of being mounted to a weapon for use in game hunting.  For this reason alone, there is sufficient basis to support the jury's verdict of non-infringement of the '196 Patent, and Plaintiff's motion for JMOL is properly denied.  Moreover, none of the alleged errors of law that Plaintiff sets forth warrant a new trial on the issue of infringement of the '196 Patent.  The alleged errors do not relate to the limitation requiring the accused EPIC cameras to be capable of being mounted to a weapon for use in game hunting.  Thus, those alleged errors would not have impacted a reasonable finding by the jury that the EPIC products were not capable of being mounted to a weapon for use in game hunting.  Therefore, the Court is not

persuaded that the verdict is contrary to the evidence, and Plaintiff's motion for a new trial is denied.

### C.    Validity of the '038 Patent

A patent is invalid for obviousness "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the claimed invention pertains."  35 U.S.C. § 103(a).  Obviousness is a question of law that is predicated upon several factual inquiries.  *Richardson–Vicks Inc. v. Upjohn Co.*, 122 F.3d 1476, 1479 (Fed. Cir. 1997).  The underlying factual issues relevant to the issue of obviousness are:  (1) the scope and content of the prior art; (2) the level of ordinary skill in the prior art; (3) the differences between the claimed invention and the prior art; and (4) any secondary considerations of non-obviousness such as commercial success or long-felt need.  *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406-07 (2007).  A patent is likely to be obvious if it merely yields predictable results by combining familiar elements according to known methods.  *Id*. at 416.  Moreover, when determining obviousness, courts must consider "interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art."  *Id*. at 418.  In re-creating the facts as they may have been found by the jury, the Court views the record in the light most favorable to the verdict winner. *Richardson-Vicks Inc.*, 122 F.3d at 1479.  The Court accepts factual findings presumed from a jury verdict that are supported by substantial evidence.  *Id*.

Plaintiff's sole argument in its challenge to the jury's finding of obviousness is that Defendant did not meet its burden of proving invalidity by clear and convincing evidence because no reasonable jury could find that any of the prior art disclosed a "mounting rail." (Doc. No. 269 at 6.) The Court previously construed the term "mounting rail" to mean "an elongated structural member with a cross-section shaped to correspond to a track in a mount to permit longitudinal sliding movement into and out of the track in the mount." (Doc. No. 87 at 23; Trial Tr. Vol. 7 at 1354.) The Court further construed the term "extending parallel" to mean "the mounting rail has a longitudinal access parallel to the central axis to the housing camera body and the primary longitudinal dimension of the mounting rail extends to the primary longitudinal direction as the housing camera body." (Doc. No. 87 at 24; Trail Tr. Vol. 7 at 1354.)

Defendant's expert, Dr. Buckman, testified at trial that the '038 Patent was invalid, stating that all of the elements recited in the asserted claims were shown in the prior art. (Trial Tr. Vol. 5 at 866-924.) With respect to the "mounting rail" element, Dr. Buckman relied on prior art references, including: the Sony DSR-200 Operating instructions; U.S. Patent No. 3,062,114 (the "'114 Patent"); and U.S. Patent No. 5,615,854 (the "'854 Patent"). Dr. Buckman explained why it would be obvious to a person of ordinary skill in the art to mount a camera on a weapon with the lens facing the axis of the barrel of the weapon and that for "decades" there have been "plenty of approaches out there to mount cameras to weapons." (*Id*. at 869-70, 873-74.) For example, Dr. Buckman testified that the '114 Patent disclosed a rail mount for mounting a camera to a weapon for use in game hunting and pointed specifically to Figure 2: "Figure 2 is a blow up of the camera and

the mount.  And it shows—it shows a mount which is a rail mount.  You can tell that by

looking at the cross section of where the—where the—where the rail enters the mount

and slides back and forth."  (*Id.* at 874; *see also* Trial Tr. Vol. 6 at 1079.)  Dr. Buckman

further explained that the structure identified in Figure 2 was the mounting rail required

by the asserted claims of the '038 Patent.  (Tr. Vol. 5 at 875; Tr. Vol. 6 at 1076-86.)

Dr. Buckman explained:  "We have something that is obviously a rail mount here, that

slides back and forth. . . .  The mounting rail is on top of the camera.  It runs parallel to

the main axis of the camera.  That is the one which points towards the target. . . . [the

mounting rail] is parallel to that surface of the housing."  (Trial Tr. Vol. 5 at 906, 908.)

   In addition, Dr. Buckman testified that the text and figures of the user manual for

the Sony DSR 200 video camera and the brochure describing the camera disclosed and

claimed the mounting rail of the '038 Patent.  (*Id.* at 889, 894-97; Trial Tr. Vol. 6

at 1055-68, 1080-85.)  Dr. Buckman explained the figures and text as follows:

> The mounting rail allows this camera to be mounted to something that
> accepts the mounting rail.  And in this particular case that happens to be a
> tripod mount.  If you blow up pictures 1 and 2 here, you can see over here
> the cross section of a mount in panel 2 looking at the bottom of the camera.
> You can see over here the grove [sic] within the tripod mount where it
> accepts that protuberance that's shown in Figure 2 there.  This is—well, not
> quite—it's more than a rail mount, but it has some characteristics of a ail
> mount.  It is a, according to reading against the claim element, it's a
> mounting rail that does extend parallel to the camera body that is along the
> general direction there.

(Trial Tr. Vol. 5 at 895.)  Dr. Buckman explained that the "protuberance" was the

mounting rail and that it could slide into the mount, that the manual instructs users of the

camera to attach the camera to the tripod adapter by placing the camera in the tripod's

"grooved surface" and sliding it forward until it clicks, and that the "mounting rail runs parallel" to the central axis of both the camera and the housing.  (*Id.* at 895-97.) Dr. Buckman concluded that the above "shows a mounting rail as part of a much earlier camera." *Id.*

Plaintiff argues that JMOL as to the validity of the '038 Patent is warranted, as none of the prior art references disclose a mounting rail and because Defendant did not meet its burden of proving that the '038 Patent is invalid by clear and convincing evidence.  Specifically, Plaintiff argues that no reasonable jury could find that the Sony DSR-200 operating instructions, upon which Defendant's expert Dr. Buckman relied, discloses a mounting rail; and that Dr. Buckman's reliance was improper because he resorted to speculation and hindsight in his analysis of the Sony DSR-200 operating instructions.  In addition, Plaintiff argues that no reasonable jury could find that any of the prior art references disclose a mounting rail, that Dr. Buckman's testimony relating to the '114 Patent is highly unreliable, and that Dr. Buckman admitted that there is no "mounting rail" in the '854 Patent.

Defendant argues in opposition that there is overwhelming evidence in the record of the invalidity of the asserted claims of the '038 Patent as obvious.  Defendant points to the testimony of Dr. Buckman and Mr. Smith, as well as to prior art references. Specifically, Defendant argues that there is substantial evidence that "mounting rail" was disclosed by prior art, the '114 Patent disclosed the claimed "mounting rail," the Sony DSR 200 disclosed the claimed "mounting rail," and the combination of various prior art

references rendered the asserted claims obvious and that a person of ordinary skill would combine the prior art references.

The Court concludes that there is substantial evidence to support the jury's verdict of obviousness with respect to the asserted claims of the '038 Patent.  In particular, there is substantial evidence to support the jury's finding of obviousness and, in particular, that Defendant met its burden of providing invalidity by clear and convincing evidence.  In particular, there is substantial evidence that the "mounting rail" of the '038 Patent was disclosed in prior art references.  Those prior art references, combined with the testimony of Dr. Buckman explaining what the references teach to a person of ordinary skill in the art, provide substantial evidence to support the jury's finding of invalidity.  In particular, a reasonable jury could have found that combining the claimed mounting rail with the well-known video camera technology would be obvious at the time to a person having ordinary skill in the art.  The arguments posited by Plaintiff in support of its motion for JMOL are either unsupported by the evidence or raise factual issues that the jury resolved against Plaintiff.  Thus, the Court denies Plaintiff's motion for JMOL on validity of the '038 Patent.

Plaintiff also moves, in the alternative, for a new trial.  In support, Plaintiff argues that Dr. Buckman's testimony as to why one of ordinary skill in the art would combine the prior art references is insufficient because it is conclusory and does not highlight specific combinations of prior art references; Dr. Buckman improperly relied upon hindsight reconstruction in his obviousness analysis; Dr. Buckman and Defendant's counsel incorrectly stated the Court's claim construction for "mounting rail"; and

Defendant's counsel incorrectly stated the law relating to obviousness during closing arguments. After reviewing the record, the Court discerns no basis to grant Plaintiff's motion for a new trial. In particular, Plaintiff has not demonstrated that the jury's verdict was against the great weight of the evidence or that there was a legal error that would warrant a new trial.

### D.     Validity of the '196 Patent

In its Answer to Plaintiff's Second Amended Complaint, Defendant asserted the affirmative defense of invalidity of the '196 Patent and counterclaimed, asserting the invalidity of the '196 Patent. (Doc. No. 44.) However, at trial, Defendant did not present evidence or testimony to prove invalidity. In fact, Defendant stipulated that the "trial does not involve a validity challenge of the '196 Patent." (Doc. No. 168 at 3.)

Defendant asserts that it originally served invalidity contentions setting forth why the asserted claims of the '196 Patent were invalid. Defendant further contends that it decided not to contest the validity of the '196 Patent because Plaintiff's Claim Chart identified the accused "apparatus" as only the EPIC camera, *not* the EPIC camera in combination with a mounting accessory. In addition, Defendant asserts that Plaintiff's agreement that the claim language in the asserted claims of the '196 Patent requiring "a mount for receiving the mounting rail" was a means plus function claim subject to § 112, ¶ 6, led to Defendant's decision not to pursue an invalidity challenge. In fact, in his Statement of the Case, Plaintiff stated:

> At the claim construction hearing, the parties agreed that the term "mount for receiving the mounting rail" is expressed in means-plus-function form according to 35 U.S.C. § 112, ¶ 6. The function performed by this element

is receiving the mounting rail.  The structure disclosed for performing this function is the mount and mounting rail as illustrated in Figures 13-19 (which includes elements 91-97, 99, 101, 103-107, 109, 111, 115-117) and other equivalent structures.

(Doc. No. 128 at 16.)

At the close of Defendant's case and at the end of trial, Plaintiff moved for JMOL on validity of the '196 Patent.  Defendant opposed the motion, arguing that Defendant should not be estopped from raising the invalidity of the '196 Patent in future litigation. (Trial Tr. Vol. 6 at 1226-27.)  Plaintiff renews his motion on the validity of the '196 Patent, arguing that Defendant had a full and fair opportunity to litigate the alleged invalidity of the '196 Patent.  Plaintiff submits that if the Court should grant JMOL or a new trial on infringement of the '196 Patent, it would be inequitable to allow Defendant to reassert invalidity of the '196 Patent.  In addition, for reasons stated in its papers, Plaintiff argues that any reliance on Plaintiff's infringement contentions and agreement to the claim construction of "mount for receiving the mounting rail," is unreasonable.

Defendant argues that it would be inequitable and unfair to enter judgment of validity of the '196 Patent in view of Defendant's reliance on Plaintiff's infringement contentions and agreed upon construction of the claim language "mount for receiving the mounting rail."  Further, Defendant submits that should Plaintiff be successful in his challenge to the jury's verdict, Defendant should be entitled to reassert its invalidity challenge with respect to the '196 Patent.

After considering the parties' respective arguments, the Court denies Plaintiff's motion for JMOL on the issue of validity of the '196 Patent.  The Court has already

denied the motion for JMOL or a new trial on the issue of infringement of the '196

Patent.  Therefore, the issue of whether Defendant waived any right to raise the issue of

invalidity is moot.[4]

### E.    Damages

Because Defendant was not found liable for infringement of any asserted claim of

either the '038 Patent or '196 Patent, neither the Special Verdict nor the Final Judgment

addressed the issue of damages.  Both parties now renew their respective motions for

JMOL and request that the Court enter JMOL in their respective favor.

A patentee is entitled to "damages adequate to compensate for the infringement,

but in no event less than a reasonable royalty."  35 U.S.C. § 284.  A reasonable royalty

can be calculated from an established royalty, the infringer's profit projections for

infringing sales, or a hypothetical negotiation between the patentee and infringer based

on the factors set forth in *Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp.

1116, 1120 (S.D.N.Y. 1970).  *Lucent Techs. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed.

Cir. 2009).  The hypothetical negotiation "attempts to ascertain the royalty upon which

the parties would have agreed had they successfully negotiated an agreement just before

infringement began," and "necessarily involves an element of approximation and

uncertainty."  *Lucent*, 580 F.3d at 1324-25 (citation omitted).

---

[4]    In the event this case is returned for a new trial at a later date, Defendant will
likely face estoppel issues if it attempts to assert invalidity as to the '196 Patent.

### 1.    Plaintiffs' Motion

In light of the Court's previous rulings with respect to Plaintiff's motions for

JMOL or a new trial on validity and infringement of the '038 Patent and '196 Patent, and

specifically the Court's denial of those motions, Plaintiff's motion for JMOL on damages

is denied.

### 2.    Defendant's Motion

Defendant requests that the Court enter JMOL of no damages.  In support,

Defendant argues that Plaintiff has failed to produce evidence, or legally sufficient

evidence, on which damages can be calculated in this case.  While the jury never reached

the issue of damages, Defendant renews its motion for JMOL for clarity and to preserve

its argument.  Specifically, Defendant argues that:  (1) Plaintiff failed to apportion any

royalty down to a reasonable estimate of the value of the claimed technology or linking

the demand for the entire accused device to the patented feature; and (2) the settlement

and license agreements relied on by Plaintiff to establish a reasonable royalty are not

comparable in scope to a license that Plaintiff and Defendant would negotiate.

Plaintiff opposes Defendant's motion.  Plaintiff's opposition is based on the

assumption that if Defendant, via Plaintiff's post-trial motions, is found liable for

infringement of the '038 Patent or the '196 Patent, Plaintiff would be entitled to an award

of damages no less than a reasonable royalty under 35 U.S.C. § 284.

After careful review of the record, the Court denies Defendant's motion.  The

Court may make a zero royalty or zero damages award in cases where there is a total lack

of proof regarding damages.  *See, e.g.*, *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1328

(Fed. Cir. 2014), *overruled on other grounds in Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015).  Here, however, there is not a total lack of proof and, had Plaintiff prevailed on an infringement claim, the jury would have had sufficient evidence upon which to make a determination of damages.

### F.    Willful Infringement

Because Defendant was not found liable for infringement of any asserted claim of either the '038 Patent or '196 Patent, neither the Verdict nor the Final Judgment addressed the issue of willful infringement.  Both parties now renew their respective motions for JMOL on the issue of willful infringement.

#### 1.    Plaintiff's Motion

In light of the Court's previous rulings with respect to Plaintiff's motions for judgment as a matter of law or a new trial on validity and infringement of the '038 Patent and '196 Patent, and specifically the Court's denial of those motions, Plaintiff's motion for JMOL on willful infringement is denied.

#### 2.    Defendant's Motion

A determination of willful infringement requires a finding, by clear and convincing evidence, that:  (1) an alleged infringer acted "despite an objectively high likelihood that its actions constituted infringement of a valid patent"; and (2) "that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer."  *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).  An

accusation of willful infringement asserted in the complaint "must find its bases in prelitigation conduct." *Id*. at 1374.

In support of its motion, Defendant argues that Plaintiff failed to present any evidence, or legally sufficient evidence, on which a reasonable jury could find that Defendant willfully infringed any of the asserted claims of the '038 Patent or the '196 Patent. First, Defendant argues that Plaintiff failed to present evidence on which a finding, by clear and convincing evidence, could be made that an objectively high likelihood of infringement existed. In addition, Defendant argues that, to the extent that Plaintiff has submitted any evidence, Defendant has consistently raised and succeeded on its defenses of non-infringement of the '038 Patent or the '196 Patent and invalidity of the '038 Patent. Defendant submits that these reasonable defenses preclude a finding of willfulness. Specifically, Defendant submits that it has presented reasonable non-infringement defenses to the asserted claims of the '038 Patent and '196 Patent, and reasonable invalidity defenses regarding the asserted claims of the '038 Patent. Defendant points out that, not only were these defenses outlined in its original motion for JMOL, but the reasonableness of the defenses is underscored by the Special Verdict and Final Judgment in this case, wherein the jury found that Defendant had not infringed any asserted claims of the '038 Patent and the '196 Patent, and further found that the asserted claims of the '038 Patent were invalid as obvious.

Plaintiff argues that Defendant is not entitled to JMOL of no willful infringement. In support, Plaintiff argues that Defendant did not rely on a reasonable non-infringement argument or a reasonable invalidity argument. Plaintiff submits that Defendant's

non-infringement arguments have changed throughout the course of litigation. Specifically, Plaintiff argues that: (1) Defendant's non-infringement argument that the accused EPIC products are not capable of being directly mounted to a weapon was not reasonable and was rejected by the Court in denying Defendant's motion for summary judgment; (2) Defendant's non-infringement argument that the accused EPIC products had to be physically altered in order to infringe the'038 Patent and the '196 Patent was not reasonable and was rejected by the Court in denying Defendant's motion for summary judgment; (3) Defendant's non-infringement theory that the accused EPIC products are not capable of being used in game hunting because they were never tested to see if they could withstand recoil is not reasonable; (4) Defendant's non-infringement argument that the accused EPIC products are not capable of being used in game hunting because they do not contain a light is not reasonable; (5) Defendant's non-infringement argument that the accused EPIC products do not contain a mount so as to infringe claim 1 of the '196 Patent is not reasonable; and (6) Defendant's non-infringement argument that the accused EPIC products do not contain a "mount for receiving the mounting rail" so as to infringe claim 1 of the '196 Patent is not reasonable. In addition, Plaintiff argues that Defendant did not rely on a reasonable invalidity argument.

The Court has considered the parties' arguments and denies Defendant's motion for JMOL. In light of the jury's findings in the Special Verdict, the jury never reached the issue of willful infringement. While the Court finds no reason to disturb the jury's findings, the Court declines to issue a ruling on JMOL as to willfulness.

### III.    Defendant's Motion for Attorney's Fees and Costs

Defendant moves for attorney's fees pursuant to Fed. R. Civ. P. 54(d)(2).

35 U.S.C. § 285 provides that the Court "may award reasonable attorney fees to the

prevailing party" in "exceptional" patent infringement cases.  "The prevailing party must

prove the exceptional nature of the case by clear and convincing evidence." *Ruiz v. A.B.*

*Chance Co.*, 234 F.3d 654, 669 (Fed. Cir. 2000).  "Only if a court finds that a prevailing

party satisfies its burden of proving an exceptional case does it determine whether to

award attorney fees." *Id.*  "Bad faith and willful infringement are not the only criteria

whereby a case may be deemed to be 'exceptional,' although when either is present the

requirement is more readily met.  Litigation misconduct and unprofessional behavior are

relevant to the award of attorney fees, and may suffice to make a case exceptional under

§ 285." *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574 (Fed. Cir. 1996).  An

"'exceptional' case is simply one that stands out from others with respect to the

substantive strength of a party's litigating position (considering both the governing law

and the facts of the case) or the unreasonable manner in which the case was litigated."

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).

Defendant asks that this case be deemed "exceptional" because Plaintiff pursued

his willful infringement case, damages, and his defense of the validity of the '038 Patent

in an unreasonable manner, and engaged in unreasonable litigation conduct, including

discovery abuse and misconduct at trial.  Defendant seeks an award of attorney fees in the

amount of $104,000, representing fees incurred in litigating issues of willful

infringement, damages, and invalidity of the '038 Patent.

While Defendant has alleged a variety of instances of misconduct throughout the course of discovery and trial, and unreasonableness in the pursuit of certain legal positions, the Court finds nothing in the record that provides the clear and convincing evidence necessary for a fee award.  Accordingly, Defendant's request for attorney's fees is denied.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Plaintiff's Motion to Alter or Amend the Judgment Entered to Remove any Judgment as a Matter of Law on Infringement of the '038 Patent (Doc. No. [259]) is **GRANTED**.

2.      Plaintiff's Motion for Judgment as a Matter of Law on Infringement of the '038 Patent (Doc. No. [261]) is **DENIED**.

3.      Plaintiff's Motion for Judgment as a Matter of Law on Infringement of the '196 Patent (Doc. No. [263]) is **DENIED**.

4.      Plaintiff's Motion for Judgment as a Matter of Law on Validity of the '196 Patent (Doc. No. [266] is **DENIED**.

5.      Plaintiff's Motion for Judgment as a Matter of Law on Validity of the '038 Patent (Doc. No. [268] is **DENIED**.

6.      Plaintiff's Motion for Judgement as a Matter of Law on Damages (Doc. No. [270]) is **DENIED**.

7.      Plaintiff's Motion for Judgment as a Matter of Law on Willful Infringement (Doc. No. [280]) is **DENIED**.

8.      Defendant's Rule 50(b) Renewed Motion for Judgment as a Matter of Law of No Damages (Doc. No. [276]) is **DENIED**.

9.      Defendant's Rule 50(b) Renewed Motion for Judgment as a Matter of Law of No Willful Infringement (Doc. No. [283]) is **DENIED**.

10.     Defendant's Motion for Attorney's Fees (Doc. No. [291]) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  September 10, 2015                      s/Donovan W. Frank
                                               DONOVAN W. FRANK
                                               United States District Judge